**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FLORIDA HEALTH SCIENCE**
**CENTER, INC., d/b/a TAMPA GENERAL**
**HOSPITAL**

        Plaintiff,

vs.                             **Case No. 8:05-CV-1601-T-EAJ**

**TONYA ROCK**,

        Defendant / Third Party
        Plaintiff,

vs.

**LIFELINK FOUNDATION, INC. and**
**CORESOURCE, INC.**,

        Third Party Defendants.

_____/

## ORDER

    Before the court are Third Party Plaintiff's **Motion for Final Summary Judgment** (Dkt.

40), Third Party Defendants LifeLink Foundation, Inc. and Coresource, Inc.'s **Memorandum in**

**Opposition to Third Party Plaintiff's Motion for Final Summary Judgment** (Dkt. 41), Third

Party Defendants LifeLink Foundation, Inc. and Coresource, Inc.'s **Dispositive Motion for Final**

**Summary Judgment with Memorandum of Law** (Dkt. 30), and Third Party Plaintiff's **Response**

**to Third Party Defendants' Motion for Final Summary Judgment** (Dkt. 35).[1]   All parties

contend there are no disputed issues of material fact.

_____

[1] On December 28, 2005, the parties consented in this case to the exercise of jurisdiction by
a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Dkt. 20).

For the reasons stated below, the undersigned grants summary judgment in favor of Third Party Defendants and against Defendant/Third Party Plaintiff.

I.     Procedural History

Plaintiff Florida Health Science Center, Inc., d/b/a Tampa General Hospital (hereinafter "Tampa General") filed suit against Defendant/Third Party Plaintiff Tonya Rock (hereinafter "Ms. Rock") in Florida state court, seeking payment of medical bills Ms. Rock incurred between January and April of 2004 (see Dkt. 2).  When Ms. Rock filed a Third Party Complaint against LifeLink Foundation, Inc. (hereinafter "LifeLink"), her employer, LifeLink removed the case to federal court because Ms. Rock's claim asserted that LifeLink should pay the medical expenses under the health benefit plan (the "Plan") provided to her as an employee benefit (see Dkts. 1, 4).  Accordingly, Ms. Rock's complaint alleges a cause of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e).[2]  Ms. Rock also filed a Third Party Complaint against CoreSource, Inc. (hereinafter "CoreSource") as the Plan's claims administrator (Dkt. 17).[3]

---

[2]  The group health insurance policy LifeLink provided to Rock constitutes an employee benefit plan within the meaning of ERISA.  Under ERISA, the term "employee benefit plan" includes an "employee welfare benefit plan and/or employee pension benefit plan." 29 U.S.C. § 1002(3).  An "employee welfare benefit plan" is a plan, fund or program established or maintained by an employer for the purposes of providing certain benefits, such as medical benefits, to participants and beneficiaries. 29 U.S.C. § 1002(1).  Because the policy at issue relates to medical benefits, it is considered an employee welfare benefit plan under ERISA.

[3]  On May 4, 2006, this court granted Tampa General's Motion to be Excused from Further Prosecution (Dkt. 27) and excused Tampa General from complying with the discovery deadlines imposed by the court.  Tampa General's motion attached a Stipulation as to Liability and Damages, executed by Ms. Rock, stating that she is liable to Tampa General for the medical expenses at issue (Dkt. 26).  The stipulation states: "It is understood and agreed that [Tampa General] will not attempt to collect this debt until either Tonya Rock's claims against LifeLink Foundation and CoreSource, Inc., are settled, resolved, decided or otherwise concluded or January 15, 2007, whichever occurs first." (Dkt. 26 at 3).

2

Both LifeLink and CoreSource denied liability because they allege that Ms. Rock's medical expenses fall within an exclusion under the Plan for expenses associated with a surrogate pregnancy (the "surrogate mother exclusion") (Dkt. 30 at 2). Ms. Rock seeks a declaration that coverage does extend under the Plan (Dkt. 4 at 2; Dkt. 17 at 2).

II.      Factual Background

During the relevant time frame, Ms. Rock was employed by LifeLink, who provided her with health insurance coverage under the Plan (Dkt. 30 at 5; Dkt. 40 at 2). LifeLink is the Plan administrator with "full charge of the operation and management of the Plan." (Dkt. 32, Ex. A at 62). The Plan vests LifeLink with discretionary authority to interpret the terms of the Plan, "including but not limited to, determination of eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan . . ." (Id.). LifeLink retained CoreSource, an independent claims administrator, to process claims for benefits under the Plan (Id. at 1). As the claims administrator, CoreSource maintained discretionary authority to review all denied claims and appeals for benefits under the Plan (Id. at 62).[4]

The Plan defines "pregnancy" as "the physical state that results in childbirth or miscarriage." (Dkt. 32, Ex. A at 78). The plan specifically provides for coverage of pregnancy expenses:

> Covered expenses for pregnancy or complications of pregnancy shall be provided for a covered female employee or a covered female spouse of a covered employee.

(Id. at 14).

However, the Plan excludes coverage for medical expenses for the following:

_____

[4] The Plan defines CoreSource as the claims processor (Dkt. 32, Ex. A at 1). In the parties' filings, however, CoreSource is identified as the claims administrator. Accordingly, the court uses the term claims administrator to describe CoreSource.

>Charges for services, supplies or treatment related to the diagnosis or treatment of infertility and artificial reproductive procedures, including, but not limited to: artificial insemination, intro fertilization, surrogate mother, fertility drugs when used for treatment of infertility, embryo implantation, or gamete intrafallopian transfer (GIFT).

(<u>Id.</u> at 23).

The Plan does not define "surrogate mother".

The Plan also extends coverage for complications from non-covered treatments:

>Care, services or treatments required as a result of complications from a treatment not covered under this Plan will be covered.

(the "complications from non-covered treatment" provision) (<u>Id.</u> at 22).

On August 17, 2003, Ms. Rock agreed to act as a surrogate and carry the baby of her brother and his wife (Dkt. 39, Ex. A at ¶ 2). The surrogacy procedure was successful, and Ms. Rock became pregnant (<u>Id.</u>). Ms. Rock's brother and sister-in-law paid for the surrogacy procedure (<u>Id.</u> at ¶ 3).

Ms. Rock did not submit any medical expenses related to the surrogacy procedure to the Plan for payment. However, between January and April of 2004, Ms. Rock incurred medical expenses related to her pregnancy, including labor and delivery charges and charges for emergency care at Tampa General (<u>Id.</u> at ¶ 4). Tampa General submitted claims to CoreSource for payment of these expenses (Dkt. 30 at 5). CoreSource refused to pay the claims, pointing to the Plan's surrogate mother exclusion (<u>Id.</u>). There is no evidence that LifeLink participated in CoreSource's decision to deny coverage to Ms. Rock.

Both LifeLink and CoreSource contend that the language of the Plan expressly excludes coverage of the medical expenses (<u>Id.</u> at 7). Ms. Rock, however, contends that the term "surrogate mother" is ambiguous. She asserts that the context in which the term is used infers that the Plan intends to deny coverage to a surrogate mother used by the named insured and to cover the

4

pregnancy-related medical expenses of a named insured who is acting as a surrogate mother for someone else (Dkt. 40 at 3-4).

III.     Legal Standard for Summary Judgment

Summary judgment is appropriate where "there is no genuine issues as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Chelates Corp. v. Citrate, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of demonstrating to the court that it has met this standard.  Chelates Corp., 477 U.S. at 323.  Under Fed. R. Civ. P. 56(e), once the movant has met this burden, the nonmoving party must identify specific facts that raise a genuine issue for trial.  Id. at 324.

The court may not decide a genuine factual dispute in ruling on a motion for summary judgment, but rather must decide if material factual issues are present.  Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990) (citations omitted).  The court must judge all evidence in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmoving party's favor.  Id.  However, the evidence also must be viewed within the scope of the evidentiary burden of the respective parties under the substantive law of the case.  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  If, under this standard, the evidence can be considered such that a reasonable jury could find for the nonmoving party, summary judgment is inappropriate.  Fernandez, 906 F.2d at 564 (citing Chelates, 477 U.S. at 324).

IV.     The Parties' Arguments

Ms. Rock moves for summary judgment contending that CoreSource's decision to deny her claim was arbitrary and capricious for two reasons.

First, Ms. Rock argues that because "surrogate mother" is undefined in the Plan, it creates

5

an ambiguity that the court should construe against LifeLink and CoreSource (Dkt. 40 at 3-4).  Ms. Rock's contention is that the surrogate mother exclusion does not apply to a covered employee who is acting as a surrogate mother for someone else.  Instead, according to Ms. Rock, when read with the Plan's provisions as a whole, the exclusion applies to services, supplies, or treatment related to the diagnosis or treatment of her own infertility.  It is undisputed that the Plan provides coverage for expenses related to the insured's pregnancy; therefore, Ms. Rock advances that her interpretation of the Plan as covering expenses related to her pregnancy is reasonable (Id. at 10-11).  Second, Ms. Rock argues that the expenses at issue are covered under the Plan's provision extending coverage for complications from non-covered treatments (Id. at 15).

Further, although Ms. Rock argues that LifeLink and CoreSource's denial of benefits was arbitrary and capricious, as discussed infra, she maintains that the court should review the decision to deny benefits under the heightened arbitrary and capricious standard (Id. at 9).

LifeLink and CoreSource allege that their interpretation is not arbitrary and capricious because the surrogate mother exclusion unambiguously excludes coverage for the medical expenses associated with Ms. Rock's surrogate pregnancy and, in any event, that their decision was not "wrong" under ERISA case law (Dkt. 30 at 11-12).  LifeLink and CoreSource assert that the arbitrary and capricious standard of review is appropriate in this case because there is no evidence that either CoreSource or LifeLink suffers from any self interest or other potentially motivating financial interest in the outcome of the decision to deny Ms. Rock's claim (Id. at 13).

V.      Appropriate Standard of Review in ERISA Case

Under ERISA, Ms. Rock has the burden of showing that she is entitled to benefits under the Plan.  Stvartak v. Eastman Kodak Co., 945 F.Supp. 1532, 1536 (M.D. Fla. 1996), aff'd, 144 F.3d

6

54 (11th Cir. 1998).[5]

A denial of benefits under an ERISA plan must be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the court finds that the documents grant discretion to the claims administrator, it applies either an arbitrary and capricious standard of review or a heightened arbitrary and capricious standard. Tippett v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1232 (11th Cir. 2006). The heightened arbitrary and capricious standard applies if the plan documents grant the administrator discretion and there is a conflict of interest. Id. (citation omitted). If the claims administrator was acting under a conflict of interest, "the burden shifts to the [administrator] to prove that its interpretation of the plan provisions committed to its discretion was not tainted by self interest." Brown v. Blue Cross & Blue Shield of Ala., Inc., 898 F.2d 1556, 1566 (11th Cir.), cert. denied, 498 U.S. 1040 (1990).

If the health plan vests the claims administrator with discretion, regardless of which standard of review applies, the court must determine whether the claims administrator's interpretation of the Plan was "wrong". Tippitt, 457 F.3d at 1232 (citing HCA Health Serv., 240 F.3d at 993). A claims

---

[5] Plaintiff exhausted available administrative remedies prior to filing suit. See Springer v. Wal-Mart Assoc. Group Health Plan, 908 F.2d 897, 899 (11th Cir. 1990); HCA Health Serv. of Georgia, Inc. v. Employers Health Ins. Co., 240 F.3d 982, 992 (11th Cir. 2001). Although the parties do not argue this point in their summary judgment motions, LifeLink and CoreSource assert as affirmative defenses Ms. Rock's failure to exhaust her remedies under the Plan (Dkt. 5 at 5; Dkt. 23 at 3). Under an assignment executed by Ms. Rock (see Dkt. 4 at 4), however, Tampa General submitted a claim for payment of Ms. Rock's medical expenses to CoreSource, who denied it. Tampa General's counsel then requested that CoreSource revisit its decision (see Dkt. 36, Ex. A). CoreSource again denied Tampa General's request for payment in a letter dated August 13, 2004 (Id.). Although the August 13, 2004 letter did not contain a statement that Ms. Rock could file suit under ERISA, as required by the Plan, it is sufficient to establish that Ms. Rock exhausted her administrative remedies (see Dkt. 32, Ex. A at 51).

administrator's decision is "wrong" when the court disagrees with its interpretation of the plan after a <u>de</u> <u>novo</u> review of the plan documents and disputed terms. <u>Tippitt</u>, 457 F.3d at 1232. If the court disagrees with the decision, it must determine whether the claimant has proposed a reasonable interpretation of the plan. <u>Id.</u> However, even if the claimant's proposed interpretation is reasonable, the court still must determine whether the claims administrator's "wrong" interpretation is reasonable.[6] <u>Id.</u> (quoting <u>HCA Health Serv.</u>, 240 F.3d at 993-94).

At this step in the analysis, the court examines the self interest of the claims administrator. <u>Id.</u> If there is no conflict of interest, the inquiry stops and the standard of review is arbitrary and capricious.[7] <u>HCA Health Serv.</u>, 240 F.3d at 994.

Application of the arbitrary and capricious standard requires the court to look only to the facts known to the administrator at the time the decision was made to deny Plaintiff coverage. <u>Lee v. Blue Cross/Blue Shield of Ala.</u>, 10 F.3d 1547, 1550 (11th Cir. 1994); <u>Rosser-Monahan v. Avon Prods.</u>, Inc., 227 F.R.D. 695, 697-98 (M.D. Fla. 2004). The court's role is limited to determining whether the contested interpretation was made rationally and in good faith. <u>Rosser-Monahan</u>, 227 F.R.D. at 698. Under this deferential standard, an administrator's decision to deny a claim will be upheld if there is a reasonable basis for the decision. <u>Tippitt</u>, 457 F.3d at 1232.

If a conflict does exist, the heightened arbitrary and capricious standard applies. Under this

---

[6] A claimant's reasonable interpretation does not trump the claims administrator's wrong interpretation because the health benefit plan explicitly grants the claims administrator discretion to interpret the plan. <u>HCA Health Serv.</u>, 240 F.3d at 994 (citing <u>Brown</u>, 898 F.2d at 1563).

[7] If the court agrees with the ultimate decision of the administrator, it will not decide whether a conflict exists. <u>HCA Health Serv.</u>, 240 F.3d at 993-94 (citing <u>Marecek v. BellSouth Telecomm., Inc.</u>, 49 F.3d 702, 705 (11th Cir. 1995)). Only when the court disagrees with the decision does it look for a conflict and, if it finds such a conflict, reconsider the decision in light of this. <u>Id.</u>

standard, the burden shifts to the claims administrator to prove that its interpretation of the plan is not tainted by self interest. HCA Health Serv., 240 F.3d at 994-95. The claims administrator satisfies this burden by showing that its wrong but reasonable interpretation of the plan benefits the class of participants and beneficiaries. Id. If the claims administrator fails to meet this burden, its decision is not entitled to deference. Id. at 995.

VI.    Analysis

In this case, the parties agree that the Plan vests discretionary authority in both LifeLink and CoreSource. Therefore, at a minimum, the court should apply the arbitrary and capricious standard of review and possibly the heightened arbitrary and capricious review. Tippitt, 457 F.3d at 1232.

**A.    Whether CoreSource's Decision is Wrong**

The next step in the ERISA analysis is to determine whether CoreSource's decision was "wrong". To make this determination, the court will review the Plan and the disputed provisions de novo. Id.

The Plan's surrogate mother exclusion excludes coverage for:

> *Charges for services, supplies or treatment related to the diagnosis or treatment of infertility and artificial reproductive procedures, including*, but not limited to: artificial insemination, intro fertilization, *surrogate mother*, fertility drugs when used for treatment of infertility, embryo implantation, or gamete intrafallopian transfer (GIFT).

(Dkt. 32, Ex. A at 23) (emphasis added).

CoreSource and LifeLink are correct in that the Plan does not expressly limit the applicability of the surrogate mother exclusion to the infertility problems of the insured. However, the Plan does not define the term "surrogate mother", either.

ERISA is silent on matters of contract interpretation. Dixon v. Life Ins. Co. of N. Am., 389

F.3d 1179, 1183 (11th Cir. 2004).  The federal courts "have the authority to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself." <u>Tippitt</u>, 457 F.3d at 1234-35 (quoting <u>Horton v. Reliance Standard Life Ins. Co.</u>, 141 F.3d 1038, 1041 (11th Cir. 1998)).  "When crafting a body of common law, federal courts may look to state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes." <u>Horton</u>, 141 F.3d at 1041.

Under Florida law, "insurance contracts are construed according to their plain meaning. Ambiguities are construed against the insurer and in favor of coverage." <u>Taurus Holdings, Inc. v. United States Fid. & Guar. Co.</u>, 913 So.2d 528, 532 (Fla. 2005).  If a policy is "clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." <u>Id.</u> (internal quotations omitted).  However, if the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the policy is ambiguous. <u>Dahl-Eimers v. Mutual of Omaha Life Ins. Co.</u>, 986 F.2d 1379, 1381 (11th Cir. 1993); <u>Taurus Holdings</u>, 913 So.2d at 532.  Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision "must actually be ambiguous." <u>Taurus Holdings</u>, 913 So.2d at 532.  Moreover, if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision. <u>Id.</u>

The surrogate mother exclusion is ambiguous and therefore must be construed in favor of Ms. Rock. <u>See Lee</u>, 10 F.3d at 1551 ("[h]aving determined that the plan is ambiguous, we hold that application of the rule of <u>contra proferentem</u> is appropriate in resolving ambiguities in insurance contracts regulated by ERISA.").

The issue is whether the expenses Ms. Rock incurred while serving as a surrogate for her brother's child were charges for services related to an artificial reproductive procedure or the treatment of infertility.  Neither party cites to a case that interprets a surrogate mother exclusion. The court has located <u>Mid-South Insurance Company v. Doe</u>, 274 F.Supp.2d 757 (D. S.C. 2003). The facts of <u>Mid-South</u> are similar to this one: a sister, Jane Doe, acts as a surrogate mother for her brother and his wife.  <u>Id.</u> at 759.  Ms. Doe experiences complications with the pregnancy, and submits these expenses to Mid-South, her health insurance company.  <u>Id.</u> at 760.  The company refused to pay the claims.  <u>Id.</u>

Although the health plan in <u>Mid-South</u> did not cover routine pregnancy costs, Ms. Doe argued that the costs should have been covered under a provision extending coverage for complications of pregnancy.  <u>Id.</u> at 764.  The similarity to Ms. Rock's situation ends here: the policy language at issue in <u>Mid-South</u> was a provision stating that the policy was not for the benefit of third parties.  <u>Id.</u>  The court held that the policy provided coverage for the medical services provided to Ms. Doe for complications arising out of the surrogate pregnancy because the services were performed, at least in part, to protect Ms. Doe's health, not the health of the third party baby she was carrying.  <u>Id.</u>

In this case, on the one hand, the Plan covers the expenses of pregnancy and complications of pregnancy, which all parties admit Ms. Rock incurred.  Ms. Rock did not submit to the Plan any of the expenses associated with the surrogacy procedure itself.  Obviously, the method Ms. Rock used to become pregnant (i.e., through a surrogacy procedure) does not change the fact that she became pregnant.  LifeLink and CoreSource do not dispute that, had Ms. Rock become pregnant naturally, the Plan would have covered the expenses associated with her pregnancy.  As in <u>Mid-</u>

<u>South</u>, the expenses presumably were incurred at least in part to protect Ms. Rock's health, not just the health of the child she carried.  In this respect, Ms. Rock reasonably expected that the medical costs at issue would be covered under the Plan.

On the other hand, the Plan excludes from coverage services related to artificial reproductive procedures or the treatment of infertility, including the use of a surrogate mother.  There is no disputing that Ms. Rock served as a surrogate mother.  Ms. Rock did not submit expenses related to the surrogacy procedure to the Plan, and there is no evidence that she submitted claims for costs incurred during the first four months of her surrogate pregnancy.  The surrogate mother exclusion is one of 36 exclusions included in a section of the Plan titled "Medical Exclusions."  The "Medical Exclusions" section conspicuously follows and conditions the portion of the Plan that discusses covered expenses.

After a <u>de novo</u> review of the Plan, the court determines that CoreSource's decision to deny benefits under the surrogate mother exclusion was "wrong".  The surrogate mother exclusion is susceptible to more than one reasonable interpretation.  Thus, the Plan is ambiguous and should be construed against CoreSource and LifeLink.[8]

---

[8] In the "Conclusion" section of her summary judgment motion, Ms. Rock also argues that CoreSource should have paid her medical expenses under a Plan provision extending coverage for complications from non-covered treatments (Dkt. 40 at 15-16).  That provision states:

> Care, services or treatment required as a result of complications from a treatment not covered under this Plan will be covered.

(Dkt. 32, Ex. A at 22)

However, Ms. Rock offers no evidence supporting her assertion that her surrogate *pregnancy* is a *treatment* not covered under the Plan.  The Plan defines pregnancy as a "physical state which results in childbirth or miscarriage."  (<u>Id.</u> at 78).  Under a plain reading of the Plan, the "physical state" of pregnancy is not a "treatment."  Thus, the complications of non-covered treatments provision is not ambiguous and does not cover the costs at issue.  <u>See</u> <u>Taurus Holdings</u>, 913 So.2d at 532 (if a policy provision is clear and unambiguous, it should be enforced according to its terms).

### B.    Whether CoreSource's "Wrong" Interpretation was Reasonable

Next, the court must determine whether the claims administrator's "wrong" interpretation of the surrogate mother exclusion was reasonable.  HCA Health Serv., 240 F.3d at 993-94.  At this step in the analysis, the court examines the self interest of CoreSource.  Id.  If there is no conflict of interest, the inquiry stops and the standard of review is arbitrary and capricious.  Id.; see also Adams v. Thiokol Corp., 231 F.3d 837, 842 (11th Cir. 2000) (the standard of review for a fiduciary operating under a conflict of interest remains arbitrary and capricious "with a significantly diminished degree of deference.").

Ms. Rock contends that CoreSource's position as both insurer and claims administrator is an inherent conflict of interest that justifies the application of the heightened arbitrary and capricious standard of review (Dkt. 40 at 9).  In response, rather than argue that no conflict exists, CoreSource and LifeLink emphasize that Ms. Rock has produced no evidence of a conflict (Dkt. 30 at 13). In fact, beyond the Plan itself, neither party offers evidence supporting its position on this issue.

As for health insurance companies, "[b]ecause an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business."  Brown, 898 F.2d at 1561.  The insured "need only show that the fiduciary allowed himself to be placed in a position where his personal interest might conflict with the interest of the beneficiary."  Id. at 1556 (internal quotations omitted).

In this case, CoreSource is a third party claims administrator; Plaintiff points to no evidence before the court indicating that CoreSource also serves as the insurer or that CoreSource's decision was biased.  In fact, the Plan provides that "[t]he employer pays Plan benefits and administration expenses directly from general assets."  (Dkt. 32, Ex. 3 at 2).  It is undisputed that CoreSource made

13

the decision to deny Ms. Rock's claim, not LifeLink.  Ms. Rock's reliance on <u>Brown</u>, 898 F.2d 1556, is misplaced: in <u>Brown</u>, the issue was the inherent conflict posed by benefits determinations made by an insurance company administering its own policy.  Here, Plaintiff points to no evidence that CoreSource was anything other than an independent claims administrator.  Thus, Ms. Rock has failed to establish that CoreSource operated under a conflict of interest, and the court will continue its ERISA analysis under the arbitrary and capricious standard of review.[9]

### C.     Whether CoreSource's "Wrong" Decision was Arbitrary and Capricious

Applying the arbitrary and capricious standard of review, the court must uphold CoreSource's decision if it was reasonable and made in good faith.  <u>Turner v. Delta-Family Care Disability</u>, 291 F.3d 1270, 1271 (11th Cir. 2002); <u>Buckley v. Metro. Life</u>, 115 F.3d 936, 941 (11th Cir. 1997).  The court must rely on the facts known to the administrator at the time the decision was made.  <u>Buckley</u>, 115 F.3d at 941 (citation omitted).  When there is conflicting evidence, credible evidence in support of the administrator's decision is sufficient under the arbitrary and capricious standard.  <u>Boiling v. Eli Lilly & Co.</u>, 990 F.2d 1028 (8th Cir. 1993).

Factors taken into account when determining if a claims administrator's decision is arbitrary and capricious include: (1) uniformity of construction; (2) fair reading and reasonableness of its reading; and (3) unanticipated costs.  <u>Guy v. S.E. Iron Workers' Welfare Fund</u>, 877 F.2d 37, 39 (11th Cir. 1989) (citation omitted).  Further evidence of the administrator's good faith may be found

---

[9]  However, for the reasons stated hereafter, even if the heightened standard of review applied, summary judgment would still be proper.  <u>Jordan v. Metro. Life Ins. Co.</u>, 205 F.Supp.2d 1302, 1308 (M.D. Fla. 2002) (stating that "even under the heightened arbitrary and capricious standard of review, summary judgment is appropriate where there is no evidence of bias and no evidence of abuse of discretion.") (citation omitted).  No evidence of bias or abuse of discretion has been presented here.

in: (1) internal consistency of a plan under the administrator's interpretation; (2) relevant regulations; and (3) the factual background of the determination and inferences of lack of good faith. Anderson v. Ciba-Geigy Corp., 759 F.2d 1518, 1522 (11th Cir. 1985).

After considering the relevant factors, the court concludes that CoreSource's decision was not arbitrary and capricious. First, after a de novo review of the Plan, the court has determined that CoreSource's decision was "wrong" because the Plan's surrogate mother exclusion is ambiguous and susceptible to two reasonable interpretations. However, CoreSource's decision is reasonable because the Plan excludes from coverage services related to artificial reproductive procedures or the treatment of infertility, including the use of a surrogate mother. There is no disputing that Ms. Rock served as a surrogate mother. By arguing in her motion for summary judgment that an ambiguity in the Plan exists, Ms. Rock implicitly concedes that CoreSource's interpretation is reasonable. As detailed above, under ERISA case law, even a "wrong" interpretation is upheld if it is reasonable.

Next, reading the surrogate mother exclusion to exclude the pregnancy costs of an insured/surrogate mother, as CoreSource and LifeLink suggest, does not lead to an internal inconsistency in the Plan. Although the Plan covers an insured's pregnancy costs and the costs associated with pregnancy complications, that certain exceptions apply to this does not make the Plan inconsistent. Based on the facts before the court, the undersigned concludes that Ms. Rock understood that not all of the costs would be covered: she submitted costs beginning in January of 2004, when she was at least four and one-half months pregnant. Presumably she received medical attention related to her pregnancy before this date that her brother and sister-in-law paid under a surrogacy agreement. Only once Ms. Rock experienced complications did Tampa General submit claims to CoreSource on her behalf.

CoreSource properly exercised its discretion and denied Ms. Rock's claim.   The interpretation CoreSource and LifeLink advance, although "wrong", is reasonable.   There is no evidence it was made in bad faith.   Therefore, it is not arbitrary and capricious and is upheld.

VII.   Conclusion

CoreSource's decision to deny benefits to Ms. Rock under the Plan was not arbitrary and capricious and will be upheld.

Accordingly, and upon consideration, it is **ORDERED** and **ADJUDGED**:

(1)   Defendant/Third Party Plaintiff's **Motion for Final Summary Judgment** (Dkt. 40) is **DENIED**;

(2)   Third Party Defendants Lifelink Foundation, Inc. and Coresource, Inc.'s **Dispositive Motion for Final Summary Judgment with Memorandum of Law** (Dkt. 30) is **GRANTED**; and

(3)   as to Defendant/Third Party Plaintiff's declaratory judgment action, the Clerk of Court is directed to enter judgment in favor of Third Party Defendants and against Defendant/Third Party Plaintiff.

**DONE** and **ORDERED** in Tampa, Florida on this 4th day of November, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge